UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.  04-60001-CR-COOKE/Brown

**UNITED STATES OF AMERICA,**
　　　　**Plaintiff,**

vs.

**ADHAM AMIN HASSOUN, et. al.,**
　　　　**Defendant.**
_____ /

**ORDER DENYING DEFENDANT JAYYOUSI'S MOTION FOR SEPARATE TRIAL
[D.E. 858] AND DEFENDANT HASSOUN'S MOTION TO SEVER
FROM CO-DEFENDANT PADILLA [D.E. 868]**

**THIS MATTER** is before the Court upon defendant Jayyousi's Motion for Separate Trial [D.E. 858], filed on February 15, 2007 and defendant Hassoun's Motion to Sever from Co-defendant Padilla [D.E. 868], filed on February 20, 2007.  The government separately filed its Response to Jayyousi's motion [D.E. 904] and Hassoun's motion [D.E. 905] on March 13, 2007.  Hassoun filed his Reply on April 3, 2007 [D.E. 950].  This Court has reviewed these pleadings and finds as follows:

I.　　FACTS AND PROCEDURAL HISTORY

The defendants are collectively charged with three counts relating to the their joint efforts to further jihad overseas.[1]  Mr. Hassoun was initially charged with the current counts in the Third

---

[1] Count 1 charges the defendants with "Conspiracy to Murder, Kidnap, and Maim Persons in a Foreign Country" in contravention of 18 U.S.C. §956(a)(1) and (2).  Count 2 charges "Conspiracy to Provide Material Support to Terrorists" in contravention of 18 U.S.C. §371 and 2339A.  Count 3 charges the defendants with providing "Material Support to Terrorists" in contravention of 18 U.S.C. §2339A(a) and 2.

1

Superseding Indictment [D.E. 70] on October 8, 2004.[2] Mr. Jayyousi was charged in the Fourth Superseding Indictment [D.E. 91] on April 19, 2005.[3] Mr. Padilla was charged in the [Fifth] Superseding Indictment [D.E. 141] (hereinafter "the Indictment") on November 22, 2005.[4] In support of the charges, the Indictment alleges various links between these three defendants, including, but not limited to, telephone calls and money transfers. Specifically, the government has alleged that Hassoun, along with Jayyousi and others, recruited Padilla to travel overseas and participate in violent jihad. The government has made it clear since the onset of this criminal prosecution, that it intends to use substantially similar evidence—including overlapping documents, witnesses, transcripts and experts—to try the defendants.

On July 13, 2006, defendant Padilla moved for a severance from his co-defendants.[5] Padilla argued, inter alia, that the evidence against Hassoun and Jayyousi imposed a high likelihood of

---

[2] The first indictment charged Hassoun with only one count, knowingly possessing a firearm in and affecting interstate commerce despite being an alien admitted to the United States under a non-immigrant visa in contravention of 18 U.S.C. 922(g)(5)(b). See Indictment [D.E. 3]. The Second Superseding Indictment charged Mr. Hassoun with "Conspiracy to Provide Material Support to Terrorists" in contravention of 18 U.S.C. §956(a)(1) and 2339A(b) and with providing "Material Support to Terrorists" in contravention of 18 U.S.C. §2339A(a) and 2. See Second Superseding Indictment [D.E. 66]. This indictment also charged Hassoun with the "Unlawful Possession of a Firearm" count from the first Indictment and seven falsity counts which have all since been severed from the Indictment. See Order Adopting Magistrate's Report and Recommendation and Granting Defendant Hassoun's Motion to Sever Count 4 [D.E. 483] and Order Denying Defendant Hassoun's Motion to Dismiss Counts 5-11, the Falsity Counts and Granting Hassoun's Motion to Sever the Falsity Counts [D.E. 901].

[3] In addition to Mr. Hassoun and Mr. Jayyousi, the Fourth Superseding Indictment charged defendant Mohamed Hesham Youssef.

[4] In addition to Mr. Padilla and the three defendants included in the Fourth Superseding Indictment, the Indictment charged defendant Kassem Daher. Defendants Hassoun, Jayyousi and Padilla are before the Court at this time.

[5] See Jose Padilla's Motion to Sever and Continue Trial to January 29, 2007 and Incorporated Memorandum of Law [D.E. 481].

prejudicial spillover, thus impairing the jury's ability to provide him with a fair trial. Mr. Hassoun expressly declined to join Padilla's motion, and downplayed many of the joint trial concerns articulated by Padilla.[6] This Court ultimately rejected Padilla's motion, finding little potential for juror confusion or evidentiary spillover and noting that any possible prejudice could be adequately ameliorated by proper jury instructions.[7]

On January 18, 2007 this Court issued an Order sua sponte continuing trial in this matter to April 16, 2007.[8] Mr. Jayyousi filed his Motion for Separate Trial [D.E. 858] on February 15, 2007 and Mr. Hassoun filed his Motion to Sever from Co-defendant Padilla [D.E. 868] on February 20, 2007. For the reasons addressed in this Order, Jayyousi's Motion for Separate Trial and Hassoun's Motion to Sever from Co-defendant Padilla are **DENIED.**

## II.   LEGAL STANDARD

Rule 14 of the of Federal Rules of Criminal Procedure provides, in pertinent part, that "[i]f the joinder of . . . defendants in an indictment . . . appears to prejudice a defendant . . . the court may . . . sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). However, the Supreme Court and Eleventh Circuit have consistently held that defendants who are indicted together should be tried together. See Zafiro v. United States, 506 U.S. 534, 537 (1993) ("There is a preference in the federal system for joint trials of defendants who are indicted together"); United States v. Baker, 432 F.3d 1189, 1236 (11th Cir. 2005) (noting that "[i]n practice, the general

---

[6] See Defendant Hassoun's Response to Co-defendant Padilla's Motion to Sever and Continue Trial to January 29, 2007, at 2 [D.E. 499].

[7] See Order on Defendant Padilla's Motion to Sever and Continue Trial, at 5 [D.E. 529].

[8] See Order Continuing Trial [D.E. 788].

3

rule is that defendants who are jointly indicted should be tried together"); United States v. Morales, 868 F.2d 1562, 1571 (11th Cir. 1989) (same). Joint trials play a vital role in "promot[ing] efficiency and serv[ing] the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." Zafiro, 506 U.S. at 537. The Eleventh Circuit has stressed that the preference for joint trials is particularly appropriate in conspiracy cases. See, e.g., Baker, 432 F.3d at 1236; Morales, 868 F.2d at 1571 (noting that the "well-settled principle that it is preferred that persons who are charged together should also be tried together" is "particularly true in conspiracy cases"); United States v. Walker, 720 F.2d 1527, 1533 (11th Cir. 1983) ("The general rule is that defendants who are jointly indicted should be tried together, and this rule applies with particular force to conspiracy cases.").

In Zafiro, the Court held that "a district court should grant severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 539. The Eleventh Circuit recently acknowledged Zafiro's circumscribed scope and clarified that these "are [the] only two circumstances in which severance is the only permissible remedy." See United States v. Blankenship, 382 F.3d 1110, 1122-23 (11th Cir. 2004) (holding that Zafiro's first prong is invoked only when "a joint trial leads to the denial of a constitutional right"). The fact that a joint trial may cause the defendant to suffer prejudice does not mandate severance, as a certain degree of prejudice is inherent in all multi-defendant trials. See, e.g., United States v. Alvarez, 755 F.2d 830, 857 (11th Cir. 1985); United States v. Varella, 692 F.2d 1352, 1360 (11th Cir. 1982). Ultimately, in deciding whether severance is appropriate in this case, this Court "must balance the right of the defendant to a fair trial against the public's interest in efficient and economic administration of justice." Baker, 432 F.3d at 1236 (quoting Alvarez, 755 F.2d at 857).

4

### III. ANALYSIS

#### A. DEFENDANT JAYYOUSI'S MOTION FOR SEPARATE TRIAL

Mr. Jayyousi makes essentially three arguments in support of his Motion for Separate Trial. First, Jayyousi raises a Bruton concern, based upon the potential admission of his co-defendants' custodial statements. Second, Jayyousi suggests that the negative pretrial publicity surrounding Mr. Padilla prevents jurors from independently assessing the charges against him. Finally, Jayyousi contends that the evidence offered against his co-defendants is separate and more substantial than that being offered against him, and argues that this will negatively affect the jury's ability to consider his guilt. Mr. Jayyousi's contentions are without merit.

In his motion, Mr. Jayyousi asserts that "'[i]t is clear that FISA extrajudicial statements of one or more of the co-defendants will be introduced at trial, statements that could prejudice Jayyousi." See Jayyousi Mot. at 1. Jayyousi cites Bruton v. United States, 391 U.S. 123 (1968), in support of this argument for severance. In Bruton, the Supreme Court held that a Sixth Amendment violation occurs "when a facially incriminating statement of a nontestifying co-defendant is offered into evidence at a joint trial even if the jury is instructed to consider the statement only as evidence against the defendant who made the statement." Taylor, 186 F.3d at 1335 (citing Bruton, 391 U.S. at 124). However, in Richardson v. Marsh, 481 U.S. 200 (1987), the Court clarified that a non-testifying co-defendant's statement may be admitted without violating the Sixth Amendment's Confrontation Clause when it does not "expressly implicate" the other co-defendant. Id.; see also United States v. Arias, 984 F.2d 1139, 1142 (11th Cir. 1993) (quoting United States v. Beale, 921 F.2d 1412, 1425 (11th Cir. 1991)) (noting that the Eleventh Circuit has read Bruton to exclude "only those statements by a non-testifying defendant which directly inculpate a co-defendant").

In Bruton and Richardson, the Court stressed that Bruton's narrow exception is limited to

5

instances where the statement is so "powerfully incriminating" that the jury is unable to follow limiting instructions directing that the statements only be used against the non-testifying co-defendant. See Bruton, 391 U.S. at 135-36; Richardson, 481 U.S. at 208. "In other words, admission of a co-defendant's statement is not error under Bruton where the statement 'was not incriminating on its face, and became so only when linked with evidence introduced later at trial." Arias, 984 F.2d at 1142 (quoting Richardson, 481 U.S. at 208). Thus, "[f]or Bruton to apply, a codefendant's statement must be clearly inculpatory standing alone." United States v. Satterfield, 743 F.2d 827, 849 (11th Cir.1984).

Despite citing Bruton, Mr. Jayyousi fails to explain how Bruton's narrow exception applies in this case. Jayyousi contends that "[g]iven the scope of [Hassoun and Padilla's extrajudicial statements] and the government's continued insistence that Dr. Jayyousi was part of the alleged conspiracy until its end, the potential for taint brought about by these statements is a major concern to Dr. Jayyousi's defense." See Jayyousi Mot. at 5-6. This contention falls far short of Bruton's narrow exception covering facially inculpatory statements. In fact, Mr. Jayyousi acknowledges that neither Hassoun or Padilla make reference to him in any of the extrajudicial statements at issue. See Jayyousi Mot. at 6. Thus, even if Jayyousi were to point to a statement that inculpated one of his co-defendants, he still fails to indicate which statement, standing alone, implicates him. See Taylor, 186 F.3d at 1336 (holding that defendant's inculpatory statement did not compel the jury to conclude that his co-defendant was part of the conspiracy, since the statement, while referring to other participants in the crime, did not directly incriminate co-defendant); Satterfield, 743 F.2d at 849 (holding that inclusion of co-defendant's statement did not violate Confrontation Clause since it did not specifically name the other defendants or describe them in such a manner that the jury would connect them to the statement). Mr. Jayyousi fails to provide any statements made by his co-defendants that directly

6

inculpate him in the crimes charged. Accordingly, Jayyousi's Bruton claim fails.

Jayyousi additionally contends that the pretrial publicity surrounding Mr. Padilla makes it impossible for him to receive a fair trial if his case is not severed. This argument is also unpersuasive.

Judge Hoeveler's decision in United States v. Noriega, 746 F. Supp. 1548 (S.D. Fla. 1990) is particularly instructive. In Noriega, Judge Hoeveler denied the former Panamanian dictator's co-defendants' motion to sever. Noriega's co-defendants claimed that "the excessive and inflammatory media publicity surrounding Noriega" would inevitably "result in guilt by association if they are not severed from Noriega." Id. at 1555. Like the co-defendants in this case, Noriega's co-defendants pointed to public pronouncements made by American governmental officials casting Noriega in a negative light. See id. at 1555 n.5 (noting that "no less than the President of the United States has referred to [Noriega] as a thug, a narcoterrorist, and a poisoner of our children"). Judge Hoeveler summarily dismissed these arguments, stating that "it would be premature and speculative to conclude at this point, without the benefit of a voir dire examination of prospective jurors, that the publicity surrounding Noriega is so prejudicial and widespread that a fair and impartial jury cannot be seated in this case. That determination must necessarily await the voir dire." Id. at 1556; see also United States v. Mandel, 415 F. Supp. 1033, 1052-53 (D.C. Md. 1976); United States v. Balistrieri, 346 F. Supp. 336, 339-40 (E.D. Wis. 1972), United States v. Addonizio, 313 F. Supp. 486, 493-94 (D.N.J. 1970), aff'd, 451 F.2d 49 (3d Cir. 1971), cert. denied, 405 U.S. 936 (1972). Likewise, with regard to this case, it is premature to draw any speculatory conclusions relating to the potential jurors' knowledge, views and biases premised on statements made by governmental officials.[9]

---

[9] In Noriega, the court pointed out that "the media has more recently portrayed Noriega in more sympathetic terms while focusing its criticism on the actions of the United States government in bringing Noriega to trial." See Noriega, 746 F. Supp. 1548, 1556 (D. Fla. 1990). Like Noriega, the pretrial publicity regarding Padilla has been disparate. Thus, in many instances, if a prospective juror is familiar with Mr. Padilla's case, she may be equally exposed to the recent

7

This Circuit has long been reticent to sever charges against one defendant due to the pretrial publicity surrounding a co-defendant. See United States v. Scallion, 533 F.2d 903 (5th Cir. 1976).[10] In Scallion, the co-defendants took issue with the "prejudice, through association, that overshadowed the trial . . . ." Id. at 913. The district court denied the severance motion, and the former Fifth Circuit affirmed, finding no inherent prejudice in the trial or the jury selection process. The former Fifth Circuit stressed that "both before and during the trial, the trial judge instructed the jury to 'totally disregard' and 'pay no attention to' anything the members might hear or read in the news media." Id. at 913. Similarly, despite the pretrial publicity associated with this criminal prosecution, finding a fair jury that does not harbor 'inherent prejudice' is a surmountable task. Like the court in Scallion, this Court intends to provide the jury with very specific and thorough instructions in order to impede jurors from considering information that may otherwise prejudicially affect their judgment. See United States v. Garcia, 405 F.3d 1260, 1272-73 (11th Cir. 2005) (noting that "a district court's limiting instructions often will suffice to cure any risk of prejudice.")

Further weakening Mr. Jayyousi's argument is the actuality that, even if he were tried alone or with Hassoun, evidence regarding Padilla would still be germane to the government's case. Thus, any alleged prejudice that Jayyousi claims the jury pool harbors, would still be imputed to him in a severed trial. The charges focus on the collective actions of all the defendants to further violent jihad overseas. Consequently, the government intends to use a patchwork of evidence connecting all the defendants in order to prove their guilt. This Court is of the opinion that it is very possible to seat a fair and impartial jury in this case. However, assuming arguendo, that this Court was persuaded

---

publicity sympathetic to Padilla.

[10] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit, in an en banc decision, adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

by Jayyousi's pretrial publicity argument, the remedy Mr. Jayyousi seeks still fails to ameliorate the prejudice he describes.

Mr. Jayyousi's argument is premature. The jury selection process is meant to ensure a fair and impartial jury for all parties to this criminal prosecution. The process has already been initiated in this case, and in its early stages has revealed that the jury pool is comprised of individuals with varying degrees of knowledge regarding this case, the defendants generally and Mr. Padilla. In their preliminary questionnaires many of the potential jurors indicated that they had no knowledge of Mr. Padilla, his co-defendants or the pending criminal prosecution. Furthermore, regardless of their knowledge of the proceedings and personal views, a substantial number of potential jurors indicated it would not be difficult for them to "follow the instructions of the Court" and to "be completely fair and impartial to the defendants in this case."[11]

Additionally, counsel on both sides have worked together to independently excuse numerous jurors for cause in instances where they agreed that the potential juror's bias was insurmountable. This Court also held a hearing on March 29, 2007, where it disqualified numerous other potential jurors because of their impassable biases.[12] The Court has provided the defense with considerably more peremptory challenges than they are entitled to under Rule 24(b)(2) of the Federal Rules of Criminal Procedure.[13] This should provide yet another safeguard for the defense to ensure that the

---

[11] See Juror Questionnaire, pp. 30-31, questions 110 and 111.

[12] See Hearing Transcript, March 29, 2007.

[13] Federal Rule of Criminal Procedure Rule 24(b)(2) provides 10 peremptory challenges when the defendant or defendants jointly are charged with a crime punishable by imprisonment of more than one year. This Court has provided the defense with 36 peremptory challenges, almost four times the amount allotted them under Rule 24.

9

jury empaneled in this case is fair and free of any bias.[14] Thus, contrary to Mr. Jayyousi's contentions, the initial indicators suggest that the degree of knowledge and biases held by the jury pool diverges widely. Furthermore, the parties and Court's collective efforts to excuse for cause jurors with insurmountable biases, the extensive voir dire scheduled to commence on April 16, 2007 and the additional peremptory challenges allotted to the parties should ensure that a fair and impartial jury is seated in this case.

Lastly, Mr. Jayyousi argues that the evidence offered against his co-defendants is separate and more substantial than that being offered against him. Jayyousi contends that this will prevent him from receiving a fair trial and asserts that "[n]o limiting instruction or instructions will make it possible for any jury to "compartmentalize" the evidence material to Defendant Jayyousi." See Jayyousi Mot. at 1. Jayyousi's argument is baseless.

The government has repeatedly contended that it will introduce evidence, linking these three defendants through telephones calls, faxes, money transfers and other contacts. See Gov. Jayyousi Res. at 3. Trying the defendants in this case separately would inevitably require unnecessary duplication of evidence. See Morales, 868 F.2d at 1572 (affirming district court's severance denial where "if the [defendants] had been tried separately it would have resulted in extensive duplication of evidence"); United States v. Abbell, 926 F. Supp. 1545, 1551 (S.D. Fla. 1996) (denying severance where "multiple trials would entail duplication of much of the testimony"). The defendants are

---

[14] See Spivey v. Head, 207 F.3d 1263 (11th Cir. 2000) ("So long as the jury that sits is impartial, the fact that a defendant had to use a peremptory challenge to achieve that result does not mean U.S. Const. amend VI was violated. Claims that the jury was not impartial must focus on the jurors who actually sat.").

inextricably linked in the conspiratorial crimes charged,[15] and are each named in all three of the Indictment Counts.[16]  Accordingly, adherence to the Eleventh Circuit's well-settled preference for trying conspiracy co-defendants together is particularly appropriate in this case.  See Baker, 432 F.3d at 1236.

Furthermore, Jayyousi's concerns regarding the jurors' inability to "compartmentalize" the evidence related to him is unfounded.  In this Court's Order on Defendant Padilla's Motion to Sever and Continue Trial [D.E. 529], I found that "[t]here [i]s relatively little potential for jury confusion resulting from evidentiary 'spill over' or 'guilt by association'" as a result of trying these defendants together.  Mr. Jayyousi has failed to put forth an argument in support of why this Court's prior pronouncement is no longer proper.  Jayyousi incorrectly focuses on the limited amount of evidence related to him and the differences between the evidence offered against him and his co-defendants as grounds for severance.  See Baker, 432 F.3d at 1236 (noting that "a defendant does not suffer 'compelling prejudice simply because much of the evidence at trial is applicable only to his codefendants' . . . even when the disparity is 'enormous.'") (quoting Alvarez, 755 F.2d at 857; United States v. Schlei, 122 F.3d 944, 984 (11th Cir. 1997); United States v. Blankenship, 382 F.3d 1110, 1123 (11th Cir. 2004) (holding that even an "enormous disparity" in the quantity of evidence being offered against co-defendants does not mandate severance because of the "strong presumption that jurors are able to compartmentalize evidence by respecting limiting instructions").

---

[15] For a more robust discussion regarding the interwoven nature of defendants' alleged actions see Order on Defendant Padilla's Motion to Sever and Continue Trial [D.E. 529] at 2-3.

[16] This Court has already severed the eight Indictment counts that did not apply to all defendants.  See Order Adopting Magistrate's Report and Recommendation and Granting Defendant Hassoun's Motion to Sever Count 4 [D.E. 483] and Order Denying Defendant Hassoun's Motion to Dismiss Counts 5-11, the Falsity Counts and Granting Hassoun's Motion to Sever the Falsity Counts [D.E. 901].  The three counts remaining charge all defendants, and employ evidence relevant to all defendants.

Mr. Jayyousi fails to present a justifiable claim for severance. Jayyousi has not sufficiently articulated how this case raises a Bruton issue implicating Sixth Amendment concerns. Additionally, Mr. Jayyousi's contentions regarding Padilla's pretrial publicity and any supposed evidence disparity will not prevent the jury from making a reliable judgment in this case. Jayyousi's belief that he would stand a better chance at trial if his case was tried separately does not warrant severance. Some degree of bias is inherent in all joint trials. See Alvarez, 755 F.2d at 857; Varella, 692 F.2d at 1360. However, the great lengths undertaken by all parties to ensure selection of a fair and unbiased jury in conjunction with proper limiting instructions will keep any prejudice to a minimum. Mr. Jayyousi has failed to invoke either of Zafiro's two prongs mandating severance. Accordingly, in this case, the public's interest in efficient and economic administration of justice outweighs any concerns regarding the ability for Mr. Jayyousi to receive a fair trial.

### B. DEFENDANT HASSOUN'S MOTION TO SEVER FROM CO-DEFENDANT PADILLA

Mr. Hassoun makes two arguments in support of his Motion to Sever from Co-defendant Padilla. First, Hassoun takes the same offense with the negative pretrial publicity surrounding Mr. Padilla as Jayyousi. Hassoun's argument is unpersuasive for the same reasons set forth in Section III(A) of this Order. Thus, in this section, this Court need only resolve Mr. Hassoun's second contention. Hassoun argues that severance is mandated in this case because a joint trial with Mr. Padilla would compromise his right to present a complete defense. Like his severance argument with regard to pretrial publicity, this contention is without merit.

Mr. Hassoun claims that if not severed from Padilla, his right to present a 'complete defense' will be impinged in two ways. See Holmes v. South Carolina, 126 S.Ct. 1727, 1735 (noting that

"[t]he Federal Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense"). Hassoun's first contention with regard to how a joint trial will compromise his right to present a complete defense was included in a sealed CIPA §5 Notice filed on February 21, 2007. The issue was argued before this Court in a CIPA hearing on March 30, 2007. This contention will be addressed separately in a sealed Order filed by this Court. Accordingly, the present Order pertains solely to the second prong of Mr. Hassoun's 'complete defense' argument. Mr. Hassoun asserts that "critical testimony which [he] must be permitted to present to the jury is inherently antagonistic to Padilla's defense," thus invoking the rubric of 'mutually antagonistic defenses.' Hassoun's argument is unavailing.

"To compel severance, the defenses of co-defendants must be more than merely antagonistic, they 'must be antagonistic to the point of being mutually exclusive.'" Garcia, 405 F.3d at 1272-1273 (quoting United States v. Knowles, 66 F.3d 1146, 1159 (11th Cir, 1995)). Such defenses do not justify severance unless "'the essence of one defendant's defense' [is] 'contradicted by a co-defendant's defense' . . . ." See Smith v. Kelso, 863 F.2d 1564, 1568 (11th Cir. 1989)(quoting United States v. Berkowitz, 662 F.2d 1127, 1132-34 (5th Cir. Unit B 1981)); United States v. Perez-Garcia, 904 F.2d 1534, 1547 (11th Cir. 1990) (noting that to warrant severance this circuit has held that defenses need be antagonistic to the point of being "irreconcilable or mutually exclusive.") (citations omitted); Berkowitz, 662 F.2d at 1134 (holding that, with respect to mutually antagonistic defenses, severance is only compelled when "the jury, in order to believe the core of testimony offered on behalf of [one] defendant, must necessarily disbelieve the testimony offered on behalf of his co-defendant."). The Eleventh Circuit has acknowledged the lofty burden necessary to compel severance due to mutually antagonistic defenses; accordingly, severance on this ground rarely occurs. See, e.g., Noriega 746 F. Supp. at 1557; United States v. Andrews, 765 F.2d 1491, 1498 (11th Cir.

13

1985); United States v. Pirolli, 742 F.2d 1382, 1386 (11th Cir. 1984).

In support of his argument, Mr. Hassoun points to evidence allegedly indicating that an individual Mr. Padilla met in Saudi Arabia recruited Padilla to train at an Al Qaeda training camp.[17] See Hassoun Mot. at 7. Hassoun asserts that he will introduce this evidence at trial in support of his defense that he did not recruit Padilla to commit acts of violent jihad. Hassoun contends that the evidence regarding the recruiter in Saudi Arabia is mutually antagonistic to any evidence Padilla may proffer denying that he was an Al Qaeda recruit at all.[18] Hassoun's argument with regard to the exclusivity of these defenses fails.

First, Hassoun assumes that evidence indicating Padilla's recruitment by an individual in Saudi Arabia to attend an Al Qaeda camp is somehow inapposite to the government's contention that Hassoun recruited Padilla, in the United States, to perpetrate violent jihadist activity abroad. This assumption is flawed. Hassoun could have recruited and convinced Padilla to conduct violent jihadist activity abroad and, once there, Padilla could have been further recruited by another or multiple individuals.

Second, Hassoun's purported defense, premised upon Padilla's recruitment by another individual in Saudi Arabia, can be presented in conjunction with Padilla's alleged defense that he was not an Al Qaeda recruit. Hassoun's defense is not premised upon evidence indicating that Padilla was

---

[17] The evidence Hassoun is attempting to proffer relates to statements made by a "facilitator" named Abdallah Ahmad Salih al-Rimi, aka Uways. The statement recounts how Padilla was convinced by another "facilitator," Abu Malki al-Sharabi, to travel to a training camp in Afghanistan, via Yemen, "to join the second jihad in Afghanistan." See Unclassified Summary of Statements, disclosed on March 14, 2007.

[18] Since the exact contours of the defenses in this case have not yet been identified, any assumptions regarding what defense routes will be taken are somewhat speculative. However, for the sake of Mr. Hassoun's motion, this Court will accept the defense Hassoun attributes to Mr. Padilla as one that Padilla intends to pursue.

an Al Qaeda combatant.[19]  Rather, Hassoun, merely intends to indicate that  Padilla was recruited by an individual in Saudi Arabia.  Thus, it is quite possible for both Hassoun's defense that an individual in Saudi Arabia recruited Padilla, and Padilla's defense that he was not actually an Al Qaeda recruit to coexist.  The mere fact that an individual—not Hassoun—was actively recruiting Padilla to join Al Qaeda does not necessarily connote that Padilla was ever a member of Al Qaeda.

"Severance is compelled only when a co-defendant has refuted those portions of a co-defendant's case that are necessary to find the defendant not guilty of the particular charged offense."  Smith v. Kelso, 863 F.2d at 1569.  Thus, severance is not mandated merely because "a defendant directly contradicts a key portion of a co-defendant's testimony."  Id.; U.S. v. Stephenson, 708 F.2d 580, 582 (11th Cir. 1983).  In Stephenson, the defendant, Stephenson, admitted that he and his co-defendants had been at the scene of a robbery, but claimed that he had not participated in or known of his co-defendants' actions with regard to the crime.  His co-defendant claimed that he was not at the scene of the crime at all.  The Eleventh Circuit held that the jury could still have accepted the co-defendant's contention, even though it was contradicted by Stephenson's testimony, and denied severance.  See Stephenson, 708 F.2d at 582.  Likewise, in this case, the essence of Mr. Padilla's and Mr. Hassoun's defenses are reconcilable.  A jury could believe Hassoun and Padilla's defenses, yet find them both not guilty.  Accordingly, Mr. Hassoun's argument in favor of mutually

---

[19]  Hassoun intends to use the evidence pertaining to Padilla's recruitment in Saudi Arabia to support his assertion that he did not recruit Padilla to commit violent jihadist activity abroad. Any evidence related to Padilla's alleged presence at an Al Qaeda training camp is clearly extraneous to this defense.  Thus, while Hassoun may like to present evidence of Padilla's alleged activity at an Al Qaeda training camp in order to make his and Padilla's defenses appear more antagonistic, the evidence is not necessary for Hassoun's defense.  The extraneous evidence surely does not go to the "essence of the movant's defense" as required by 11th Circuit caselaw.  See Smith v. Kelso, 863 F.2d at 1568 (quoting Berkowitz, 662 F.2d at 1132-34) (holding that severance is not mandated unless "'the essence of one defendant's defense' [is] 'contradicted by a co-defendant's defense' . . . .").

15

exclusive defenses fails.

      Mr. Hassoun fails to present a justifiable claim for severance. Hassoun's contentions regarding Padilla's pretrial publicity will not prevent the jury from making a reliable judgment in this case. The thoroughness of the jury selection process in conjunction with proper limiting instructions provide adequate safeguards to ensure that the jury will be fair and unbiased. Furthermore, Hassoun's claim regarding mutually exclusive defenses is unpersuasive. The 'essence' of the defenses Hassoun cites will not prevent the jury from considering the evidence and individually assessing the culpability of each defendant. Mr. Hassoun has failed to invoke either of <u>Zafiro</u>'s two prongs mandating severance. Accordingly, in this case, the public's interest in efficient and economic administration of justice outweighs any concerns regarding the ability for Mr. Hassoun to receive a fair trial.

### IV.  CONCLUSION

For the reasons set forth above, this Court finds it proper to adhere to the well-settled principle dictating that in conspiracy cases, persons who are charged together should also be tried together. Accordingly, it is hereby**:**

**ORDERED and ADJUDGED** that Defendant Jayyousi's Motion for Separate Trial [D.E. 858], filed on February 15, 2007 is **DENIED**.

**ORDERED and ADJUDGED** that Defendant Hassoun's Motion to Sever from Co-defendant Padilla [D.E. 868], filed on February 20, 2007 is **DENIED**.

**DONE AND ORDERED** in Chambers at the United States District Courthouse, Miami, Florida, this 15th day of April, 2007.

_____
MARCIA G. COOKE
United States District Judge


Copies furnished to:   *All Counsel of Record*